Willie S. CRAFT et al.,
Plaintiffs-Appellants,

v.

MEMPHIS LIGHT, GAS AND WATER
DIVISION et al., Defendants-Appellees.

No. 75–1350.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 16, 1975.

Decided April 12, 1976.

Thomas M. Daniel, Memphis & Shelby County Legal Service, Memphis, Tenn., for plaintiffs-appellants.

Frierson M. Graves, Jr., Memphis, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and PECK and MILLER, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Named plaintiffs-appellants, Willie S. Craft, his wife Mary Craft, Sarah Parks, Ida Bell Holmes, and Annie Sue Funzie[1] filed this purported class action in district court challenging defendants-appellees' policies of terminating and of refusing to connect electric, gas and water services (collectively hereinafter "utilities") as unconstitutionally denying appellants' classes proce-

1. The Crafts, Parks and Funzie asserted due process violations stemming from terminations, Holmes the equal protection violation from refusal to connect. The Crafts' termination allegedly arose from disputed bills, Parks' from MLG&W's failure to bill for several months, thereby preventing her, as a person of "limited income" from being able to pay one large bill, and Funzie's also from her inability to pay an "extremely large" first bill from her "quite limited income." No error is assigned on appeal in the district court dismissal of the Funzie

dural due process and equal protection, respectively. The district court, after trial, found that there was no civil rights jurisdiction over municipally-owned MLG&W,[2] that a class action would be inappropriate, and, distinguishing *Palmer v. Columbia Gas,* 479 F.2d 153 (6th Cir. 1973), that appellees' termination procedures comported with constitutional due process. We affirm in part, reverse in part, and remand.

## CLASS ACTION

■ Preliminarily, we find no error in the district court's refusal to certify a class action. The district court

"conclude[d] that this is not a proper case for class action (as to damages), however, except to the extent of declaratory judgment or other relief granted which may accrue to the benefit of others similarly situated to [appellants]. The questions of fact common to members of the class on the question of damages, particularly, and also with respect to circumstances of a purported dispute over charges would predominate as to individuals rather than all members of the alleged class. The Court is not convinced that claims of the representative parties are typical of claims that may be made by the purported class with regard to various and myriad situations or circumstances pertaining to due process violations, if any."

As to a Fed.R.Civ.P. 23(b)(3) class asserting damage claims,[3] there would be no predominate common question of fact. See *Carter v. Kilbane,* 519 F.2d 1370 (6th Cir. 1975); *Hayes v. Board of Regents,* 495 F.2d 1326, 1329 (6th Cir. 1974). As to a Rule 23(b)(2) class asserting claims to injunctive and declaratory relief, the district court properly recognized that such relief to the extent "granted [would] . . . accrue to the benefit of others similarly situated" and, consequently, as the Eighth Circuit has recognized, "[n]o useful purpose would be served by permitting this case to proceed as a class action" because "[t]he determination of the constitutional question can be made by the Court and the rules and regulations determined to be constitutional or unconstitutional regardless of whether this action is treated as an individual action or as a class action." *Ihrke v. Northern States Power Co.,* 459 F.2d 566, 572 (8th Cir.), *vacated and remanded to dismiss as moot,* 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972). Accord, *Carter v. Butz,* 479 F.2d 1084, 1089 (3rd Cir.), *cert. denied,* 414 U.S. 1094, 1103, 94 S.Ct. 727, 38 L.Ed.2d 559 (1973); *Martinez v. Richardson,* 472 F.2d 1121, 1126–27 (10th Cir. 1973); *Cockerel v. Caldwell,* 378 F.Supp. 491, 494 (W.D.Ky.1974) (three-judge court); *Doe v. Wohlgemuth,* 376 F.Supp. 173, 181–82 (W.D.Pa.1974) (three-judge court), *vacated on other grounds sub. nom. Doe v. Beal,* 523 F.2d 611, 613 n.2 (3rd Cir. 1975) (en banc); *Koehler v. Ogilvie,* 53 F.R.D. 98, 101 (N.D.Ill.1971) (three-judge court), *aff'd mem.,* 405 U.S. 906, 92 S.Ct. 938, 30 L.Ed.2d 777 (1972); *Holt v. Brown,* 336 F.Supp. 2, 6 (W.D.Ky.1971) (three-judge court); *Nelson v. Likins,* 389 F.Supp. 1234, 1239 (D.Minn.1974); *Mohr v. Jordan,* 370 F.Supp. 1149, 1151 n.3 (D.Md.1974), *aff'd,* (No. 74–1496, 4th Cir., filed July 31, 1974);

claim. Indeed, appellants' counsel admits that Funzie failed to testify at trial "because, by agreement of counsel for both parties, her utilities had been terminated for failure to pay for current usage of utility services about which there was no dispute." Appellants' Brief 5. Funzie, therefore, will not hereinafter be referred to.

**2.** See *Amen v. City of Dearborn,* 532 F.2d 554 (6th Cir. 1976).

**3.** Appellants never expressly asserted a 23(b)(3) class for damage claims, and their amended complaint explicitly admitted that, "while [they] bring this action for money damages as well as injunctive relief, the non-monetary issues clearly predominate over the monetary issues."

*Rappaport v. Katz,* 62 F.R.D. 512, 515 (S.D. N.Y.1974).

## DUE PROCESS

■ On the merits, the Fourteenth Amendment requires due process only if "state action" is "depriv[ing] any person of life, liberty or property." See, e. g., *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725, 735 (1975); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349, 357, 95 S.Ct. 449, 453–57, 42 L.Ed.2d 477, 483, 488 (1974).

■ Appellees claim that the due process clause has no application because MLG&W "operates just like a private utility in that it is required to have rates sufficient to meet its services . . . and has no governmental immunity." We conclude, however, that since it is municipally owned and controlled, the actions of MLG&W are clearly "state actions." *Davis v. Weir,* 497 F.2d 139, 143–44 (5th Cir. 1974); *Stanford v. Gas Serv. Co.,* 346 F.Supp. 717, 720 (D.Kan.1972). *Jackson, supra,* is inapposite because the majority and two dissenters independently recognized the distinction between "private utility compan[ies] and . . . municipal utility," 419 U.S. at 351, 95 S.Ct. at 454 n.8, 42 L.Ed.2d at 484, or "state [government]-owned" companies, 419 U.S. at 372, 95 S.Ct. at 464, 42 L.Ed.2d at 496. The majority, in fact, at least five times recognized that Metropolitan Edison was "private" or "privately owned and operated." 419 U.S. at 349–351, 95 S.Ct. at 451, 453, 454 n.8, 457, 42 L.Ed.2d at 482–484.

■ Though the Supreme Court has refrained from deciding whether a "claim to continued [utility] service was 'property'" for due process purposes, 419 U.S. at 359, 95 S.Ct. at 457, 42 L.Ed.2d at 488, this court in *Palmer, supra,* implicitly assumed and other courts have expressly held that claims to continued utility service constitute "property." *Condosta v. Vermont Electric Cooperative, Inc.,* 400 F.Supp. 358, 365–366 (D.Vt.

1975); *Donnelly v. City of Eureka,* 399 F.Supp. 64, 67–68 (D.Kan.1975); *Limuel v. Southern Union Gas Co.,* 378 F.Supp. 964, 966–67 (W.D.Tex.1974); *Bronson v. Consolidated Edison Co.,* 350 F.Supp. 443, 447 (S.D. N.Y.1972); *Stanford, supra,* 346 F.Supp. at 721; *Davis v. Weir,* 328 F.Supp. 317, 321 (N.D.Ga.1971). See *Salisbury v. Southern New England Tel. Co.,* 365 F.Supp. 1023 (D.Conn.1973) (continued telephone service "assume[d to be] . . . cognizable right within the due process clause"). But see *Jackson v. Metropolitan Edison Co.,* 483 F.2d 754, 759–62 (3rd Cir. 1973), aff'd on *other grounds,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

■ Having "determined that due process applies, the question remains what process is due." *Goss, supra,* 419 U.S. at 577, 95 S.Ct. at 738, 42 L.Ed.2d at 737, quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). Though "[d]ue process is, perhaps, the least frozen concept of our law," *Palmer, supra,* 479 F.2d at 165, quoting *Griffin v. Illinois,* 351 U.S. 12, 20–21, 76 S.Ct. 585, 591, 100 L.Ed. 891, 899–900 (1956), and defies "any concept of inflexible procedures universally applicable," *Goss, supra,* 419 U.S. at 578, 95 S.Ct. at 738, 42 L.Ed.2d at 737, quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961), *Palmer* has established that certain utility termination procedures fail to afford constitutional due process. See also *Limuel, supra,* 378 F.Supp. at 969; *Bronson, supra,* 350 F.Supp. at 448–50. "As a minimum," *Palmer* requires, notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Palmer, supra,* 479 F.2d at 165–66.

■ *Notice.* Constitutionally sufficient "shut-off notice . . . [must] provide the customer with the information he needs to quickly and intelligently take available steps to prevent the threatened termination of service." 479 F.2d at 166.

Yet the MLG&W "final notice"[4] no better informs customers, like the Crafts, who dispute the underlying liability than the constitutionally deficient notice in *Palmer.* Like the Columbia Gas notice therein, the MLG&W notice fails to mention "that a dispute concerning the amount due might be resolved through discussion with representatives of the company." Nor did the notice, at least prior to the opinion of the district court, inform the customer that "[c]redit [c]ounselors are available to clear up any questions, [to] discuss disputed bills or to make any needed adjustments."[5] See Marshall, J., dissenting in *Jackson, supra,* 419 U.S. at 371–373, 95 S.Ct. at 464–65, 42 L.Ed.2d at 495–496. Like the Columbia Gas notice, the MLG&W notice only warns the

**4. MEMPHIS LIGHT, GAS & WATER DIV.**
**FINAL NOTICE**
THIS BILL IS NOW PAYABLE ONLY IN MAIN OFFICE
220 SOUTH MAIN OR AT MILLINGTON OFFICE

| LAST DAY TO PAY | ACCOUNT NUMBER | AMOUNT DUE |
|---|---|---|
| | | |

IF NOT PAID BY 5 P.M. THIS DATE
SERVICE WILL BE DISCONNECTED.

ACCORDING TO OUR RECORDS YOUR SERVICE BILL IS OVERDUE FOR PAYMENT. IF NOT PAID BY 5 P.M. ON THE DATE INDICATED, IT WILL BE NECESSARY TO TERMINATE THE SERVICE. AN ADDITIONAL CHARGE WILL BE MADE FOR DISCONNECTION.

IF PAID, PLEASE DISREGARD THIS NOTICE.

**MEMPHIS LIGHT, GAS & WATER DIV.**
P.O. BOX 388, MEMPHIS, TENN. 38145
PHONE 523-0711
INFORMATION CENTER

EXHIBIT
7

| LAST DAY TO PAY | ACCOUNT NUMBER | AMOUNT DUE |
|---|---|---|
| | | |

IF NOT PAID BY 5 P.M. THIS DATE
SERVICE WILL BE DISCONNECTED.

EXHIBIT "F"

FINAL NOTICE
RETURN THIS
STUB WITH PAYMENT

---

Enclosed with the "final notice" is at least one of two "flyers." One flyer, mailed to approximately forty per cent (40%) of MLG&W's customers, provides no better notice of dispute settlement possibilities than the "final notice."

"IMPORTANT NOTICE
"If you are having difficulty paying your utility bill, bring your bill to our neighborhood credit counselors for assistance. Your utility bills may be paid here also. (No phone calls accepted at neighborhood locations.)
"Place . . . .
"Time . . . .
"You can also receive credit help at the main office at 220 S. Main from 8:30 to 5 p. m. Monday through Friday.
"Phone: 523–0711."

Another flyer gives the customer notice of some dispute settlement possibilities.

"If you are having difficulty paying your utility bill and would like to discuss a utility payment plan, *or if there is any dispute concerning the amount due,* bring your bill to the office at 220 South Main, Monday through Friday, or phone 527–0311 (sic)."

The testimony of MLG&W's secretary-treasurer, however, indicates that the latter flyer goes into "all bills, all final notices except those going to those specific areas that are accommodated by the community, credit counseling stations." Appendix 188. In sum, then, there is no assurance that the Crafts were mailed the just mentioned flyer.

5. Though finding no due process denial, the district court "suggest[ed]" that appellees implement a notice "provid[ing] more specific information about customer service locations and personnel available to work out extended payment plans or adjustments of accounts in genuine hardships or appropriate situations." Appellees' counsel has appended to his brief a copy of the "new" notice, adopted pursuant to the district court's suggestion.

"If you are having difficulty paying your utility bill due to genuine hardship and would like to work out a mutually satisfactory agreement for payment, the Memphis Light, Gas and Water Division has experienced and trained Credit Counselors available. There are supervisors and other management personnel available if you are not satisfied with the answers or solutions given by the Credit Counselors."

Of course, we imply no view as to the constitutional sufficiency of that notice.

customer to pay or face termination. See *Davis v. Weir,* 359 F.Supp. 1023, 1026 (N.D. Ga.1973); *Bronson, supra,* 350 F.Supp. at 450. That the MLG&W employee, who would physically terminate the services, was instructed to "attempt" a personal contact with the customer by knocking on the door immediately prior to termination is, of course, no notice to those customers absent from their residences.[6] Moreover, even if a contact were made, the employee was instructed to terminate unless there was a "hardship," illness, or "payment [were] in the mail," rather than informing the customer of his alternatives, the notice of which *Palmer* requires.

The MLG&W "final notice," however, is constitutionally sufficient for a customer like Parks, who asserts an inability to pay an admitted liability. The customer "having difficulty paying [the] utility bill" is instructed to "bring [the] bill to [certain] neighborhood credit counselors for assistance" and-or to the MLG&W offices "to discuss a utility payment plan." See footnote 4, *supra.*

 *Hearing.* Constitutionally sufficient hearing procedures cannot depend solely on "unsupported assumption[s] of corporate good faith." *Palmer, supra,* 479 F.2d at 168. Like Columbia Gas, MLG&W has "no established procedures for resolution of disputes." Indeed, the MLG&W secretary-treasurer at first refused to acknowledge that there could be a bona fide dispute as to a customer's liability for consumed utilities.[7] That MLG&W, unlike Columbia Gas, had established "procedure[s] for negotiation of partial payment of delinquent accounts in lieu of termination,"[8] of

course, provides no avenue for customers who, instead of claiming an inability to pay in full an admitted utilities liability (Parks), dispute the existence of the liability (Crafts). See footnote 1, *supra.*

## EQUAL PROTECTION

 Appellant Holmes claims that MLG&W's refusal to initiate service to her at 730 Chelsea Avenue, Memphis, because of an outstanding utility bill at 730 Chelsea violated her Fourteenth Amendment right to equal protection. Neither Holmes nor MLG&W disputes the district court findings that utilities service at 730 Chelsea was in the name of one Sylvester Wade beginning July 17, 1973, and that Holmes lived with Wade at 730 Chelsea until August, 1973. When Holmes applied for utilities service in her name upon returning to 730 Chelsea in December, 1973, MLG&W refused her application because of $245 in unpaid utilities bills at 730 Chelsea. The district court, however, found that Holmes was responsible for only $170 in unpaid utilities bills, the district court viewing her as being responsible for services supplied during her presence at 730 Chelsea but not responsible for services supplied in another's name in her absence. MLG&W refused Holmes' offer to pay one-half of the outstanding bill and refused to turn on her utilities until she paid the outstanding bill in full. Appellees cite *Siegel v. Minneapolis Gas Co.,* 271 Minn. 127, 135 N.W.2d 60, 63 (1965), but *Siegel* is factually inapposite because there is no evidence that Wade remained present at 730 Chelsea after December, 1973, so that by applying in Holmes' name Wade could "obtain indirectly the very thing the

---

6. Mrs. Craft testified that she received no such personal notice, and the MLG&W secretary-treasurer left open the possibility of no personal contact being made nearly one-half the time. Appendix 313–14.

7. The secretary-treasurer later acknowledged that there could be a dispute if MLG&W were attempting to bill a "customer" because of his presence and use of utilities at certain premises, rather than having those utilities listed in his name, when the customer claimed he "didn't live there." Appendix 268–273. He also admitted that disputes could arise from

gas and plumbing "leaks." Appendix 278–79. See *Limuel v. Southern Union Gas Co.,* 378 F.Supp. 964 (W.D.Tex.1974); *Davis v. Weir,* 328 F.Supp. 317 (N.D.Ga.1971).

8. Unlike the undefined, or at best ill-defined, dispute settlement mechanisms, MLG&W had a rather well-defined, and well-publicized, "extended payment plan," permitting the partial payment of certain delinquent accounts to forestall utilities termination. See, *e. g.,* Appendix 45–58.

utility was privileged to deny him directly." Indeed, Holmes uncontradictedly testified that Wade moved out, pursuant to agreement, prior to her return to 730 Chelsea. We view *Davis v. Weir,* 497 F.2d 139, 144–45 (5th Cir. 1974), which rejected a similar policy of the City of Atlanta Water Works as being more factually on-point.

"[T]he Department's discriminatory rejection of new applications for water service based on the financial obligations of third parties fails to pass XIV Amendment muster under the traditional 'rational basis' analysis. . . . [Plaintiffs'] complaint is that the Water Works has divided those who *apply* for its services into two categories: applicants whose contemplated service address is encumbered with a pre-existing debt (for which they are not liable) and applicants whose residence lacks the stigma of such charges. . . . The Water Works urges that the practice of rejecting water service applications until all accrued debts at the premises have been extinguished facilitates collection of unpaid bills at multi-unit dwellings . . . . [But a collection scheme] that divorces itself entirely from the reality of legal accountability for the debt involved, is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor. The City has no valid governmental interest in securing revenue from innocent applicants who are forced to honor the obligations of another or face constructive eviction from their homes for lack of an essential to existence—water."

We accept *Weir,* and consequently hold that MLG&W unconstitutionally refused to install services in Holmes' name.

Refusal to certify class affirmed; holding of due process compliance with Crafts reversed; holding of due process compliance with Parks affirmed; holding of no equal protection violation against Holmes reversed; and remanded. The parties will bear their own costs of this appeal and no costs are taxed.