**Maria LERMA et al., Plaintiffs,**

v.

**STOKELY-VAN CAMP, INC.,
Defendants.**

**No. 76 C 3952.**

United States District Court,
N. D. Illinois, E. D.

Jan. 15, 1981.

Bruce L. Goldsmith, Kristine Poplawski, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

Edward J. Moran, Asst. U. S. Atty., Steven E. Walanka, U. S. Dept. of Labor, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

The plaintiffs in this action are migrant farmworkers recruited for employment by Stokely-Van Camp in Illinois under the Interstate Recruitment System, a program linking unemployed workers with jobs. The plaintiffs allege that their employment was terminated prematurely and they were required to pay their own way back to Texas in violation of the terms set out by Stokely. They also allege that they neither worked an average 48 hour work week nor did they always receive the specified 20 hours/week work guarantee promised by Stokely.

As a result of these alleged violations, plaintiffs brought suit under the Wagner-Peyser Act, 29 U.S.C. § 49 *et seq.* and breach of their employment agreements with Stokely. The Texas Employment Commission, the Illinois Department of Labor and the U.S. Department of Labor were sued for their alleged failure to properly supervise and administer the program. Monetary relief was sought against Stokely-Van Camp. In June, 1977, the plaintiffs settled their claims against Stokely who agreed to pay $8000 to class members. The plaintiffs resolved their dispute with the Texas Employment Commission by a consent decree in March, 1978 and settled with the Illinois defendants in June, 1979. None of the parties admitted liability as part of its settlement.

The claims against the federal defendants remain and cross motions for summary judgment are pending. For the reasons stated below, both motions are denied.

Plaintiffs have launched a broad gauged attack on federal administration of the system in Illinois. They seek to impose an affirmative duty upon the federal government to investigate the accuracy of clearance orders and to provide an effective

complaint procedure. The defendants raise an initial standing issue, arguing that these plaintiffs cannot imply a private right of action under the Wagner-Peyser Act for injunctive relief against the federal defendants. Various courts have implied a private right of action on behalf of migrant workers after a review of the act and implementing regulations. See e. g. *Gomez v. Florida State Employment Service*, 417 F.2d 569 (5th Cir. 1969); *Jenkins v. S & A Chaissan & Sons, Inc.*, 449 F.Supp. 216 (S.D. N.Y.1978); (decided after the 1977 regulations went into effect), *Galindo v. Del Monte Corp.*, 382 F.Supp. 464 (N.D.Ill.1974). This court agrees with the rationale of those decisions.

Defendants go on to dispute the scope of the duty contended by plaintiffs and to urge that 1977 changes in the regulations moot the claims raised by plaintiffs in their complaint both because those changes narrowed the scope of any duty and because they resolved plaintiffs' concerns. This court agrees in part, but only in part, with defendants' position. A brief review of the circumstances giving rise to the complaint and the regulatory setting would here be helpful in explaining the court's decision.

Stokely-Van Camp, the employer, filed a clearance order detailing the terms and conditions of employment for the plaintiff with the Texas State employment service. That agency referred migrant farmworkers to Illinois, where the Illinois Employment Service processed them. The Wagner-Peyser Act and implementing regulations, 20 CFR 601 *et seq.* (prior to Feb. 1977) and 20 CFR § 651 *et seq.* (after Feb. 1977) provided guidelines within which those agencies were to act. The federal defendants, who set those guidelines, acted as coordinators of the program.

The duty owed by the federal defendants is set forth in the Wagner-Peyser Act. Under that statute, the federal defendants are to "assist in coordination of public employment offices ... by maintaining a system for clearing labor between the several states." 29 U.S.C. § 49b(a). They are responsible for "developing and prescribing minimum standards of efficiency" in public employment offices. *Id.* The federal defendants have a "duty ... to ascertain whether the system of public employment offices maintained in each state is conducted in accordance with the rules and regulations and the standards of efficiency prescribed by the Secretary in accordance with the provisions of said sections." 29 U.S.C. § 49b.

The regulations detail the obligations of the federal and state agencies. They set forth both federal policies and standards the state must follow in administering the Interstate Recruitment program. The 1976 regulations specify that orders should not be placed in interstate commerce unless the state agency has determined that local workers are not available, that they are needed, that prevailing wages are offered, that transportation is provided, that housing is adequate and that other terms are not less favorable than those prevailing in the area. 20 CFR 602.8 and 602.9. The regulations establish that federal policy is "to recruit no workers for employment if the wages, hours or other conditions of work offered are substantially less favorable to the individual than those prevailing for similar work in the locality." 20 CFR § 604.1(k).[1]

1. Shortly after this lawsuit was filed, the Department of Labor amended its regulations. This court's review of those provisions do not reveal that they changed the defendant's duty to act in any material way.

The new regulations add a provision that an employer must sign a statement saying that the job offer contains all materials, terms and conditions of employment including the crop, the nature of the work, the anticipated period and hours of employment, its starting date and precisely when work will be available. Although these conditions were not in the prior regula-

tions, plaintiffs Exhibit 1 indicates that Stokely did sign a statement specifying these terms. The defendants make much of a new provision specifying that:

"In view of the statutorily established basic function of the employment service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the ETA nor the state agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted of recruited upon by the ES

The Department, in an attempt to comply with a court order in *NAACP v. Brennan*, 360 F.Supp. 1006 (D.D.C.1973), established Department guidelines which included a system of monitoring and field reviews which state agencies were to follow. An extensive complaint procedure was established which provided a forum for resolution of disputes first with the local employment service, then the state employment service and ultimately the Department of Labor if the complaint had not been resolved earlier. Rules embodying these matters were first integrated into the regulations in 1977.

The Secretary's "duty" must be analyzed at two points in the process. The first is when the employer seeks to use the Interstate Recruitment system; the second, after the employer has allegedly used the system improperly.

■ In the instant situation, Stokely-Van Camp's clearance order V–Ill–8 was presented and approved by the state agencies. In that order, Stokely described the conditions of employment which included the crop, nature of the work, the wage rate, anticipated hours, housing, numbers of workers required, transportation arrangements and scheduled dates of employment. It is uncontroverted that the federal defendants examined the order. They determined that the order "satisfied the requirements of the United States Employment Service for interstate clearance and authorized their transmittal to Texas" (Answer, ¶ 1.(g)), and it is not contended that the order on its face disclosed any violation of federal requirements.

■ The defendant argues that they owed the plaintiffs no more; the plaintiffs maintain that their refusal to do more failed to protect them from the employer's alleged abuses which amounted to misrepresentations of material terms and conditions.

The statute and regulations clearly establish the federal defendants' supervisory role. Those defendants urge that the 1977 changes in regulations narrowed the scope of their duties by specifying that they are not guarantors of the accuracy or truthfulness of the information contained in job orders. But that previously was true. The representations in the clearance order are those of the employer which the federal defendants, in their supervisory role, are entitled to rely upon if they facially conform to federal requirements. The defendants met their initial statutory obligations when they examined the face of the Stokely clearance order before approving it.

That supervisory role presupposes the existence of an effective monitoring system, however, triggered by complaints that an employer has failed to comply with the facially conforming representations of a clearance order. In *NAACP v. Brennan, supra* farm workers and farm worker organizations challenged the Department of Labor's supervision of the Interstate Recruitment System. A consent decree entered in that case required establishment of a formal complaint procedure with Regional Office directives providing guidelines to the state. In this court's view, the Department's statutory duty to ascertain that state public employment offices conducted themselves in accordance with rules and regulations prescribed by the Secretary includes a duty to ensure that an effective complaint resolution procedure exists.

The central question, then, is whether the defendants have failed to properly perform that duty. To maintain an action for injunctive relief, plaintiffs must show that the defendants did not fulfill their obligations in 1976 and that there has continued to be a failure to provide an effective complaint resolution procedure despite the mechanisms established by the new regula-

---

constitute a contractual job offer to which the ETA or a state agency is any way a party. Nevertheless, if the ETA or a state agency discovers that an employer's job order contains a material misrepresentation, the procedures at Subpart F of Part 658 of this chapter shall be followed.

The court agrees with the plaintiffs' position that they do not sue the Department as a guarantor of their employment contract with Stokely-Van Camp but rather as a regulator of the system.

tions. Courts have found jurisdiction to enforce governmental duties under a mandamus theory and § 10 of the Administrative Procedure Act. In *Peoples v. United States Dept. of Agriculture*, 427 F.2d 561 (D.C.Cir.1970), the court discussed the Mandamus and Venue Act of 1972, 28 U.S.C. § 1361 stating that it:

> was intended to permit District Courts generally to issue appropriate corrective orders where federal officials are not acting within the zone of their permissive discretion but are abusing their discretion or otherwise acting contrary to law, and hence to entertain a civil action under § 10 of the A.P.A.

*See also Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974) *rehearing denied* 392 F.Supp. 559 (N.D.Ill.1975).

At the time the lawsuit was filed, the defendants had "guidelines" for resolution of complaints. Those guidelines provided that after a complaint is lodged in a local office a determination must be made with a right of appeal to the state monitor. He had 20 days to resolve it. The complainant could then appeal it to the Regional Monitor of the Department of Labor. These guidelines were not part of the regulations and were apparently published in various loose leaf reporter services. It is unclear whether plaintiffs were ever apprised that a formal complaint system existed.

It is undisputed that the plaintiffs complained to Mr. Samuels, a Department of Labor employee, about Stokely's alleged failure to fulfill the terms and conditions of employment specified in various clearance orders. The defendants state Mr. Samuels advised the Legal Assistance attorney to contact the Illinois State Monitor Advocate to lodge a complaint in accordance with current policies and to contact him again if not satisfied with the response she gave them. Defendants' Answer ¶ 1.(h). Plaintiffs did not submit an affidavit on this point but state in their brief that "they received no reply to their complaint from defendant Department of Labor." (Plaintiff's memo in opposition to federal defendant's motion for judgment on the pleadings, p. 3). In any event, the plaintiffs submitted a complaint regarding Stokely viola-

tions to Joyce Moore, the Illinois State Monitor Advocate (Plaintiff's Exhibit 2). She responded that their initial investigation did not reveal the company was in violation of the conditions stipulated in the job order. (Plaintiff's Exhibit 3).

Shortly after this lawsuit was filed, the Department of Labor amended its regulations. The complaint procedures address the same concerns but do so in a more extensive manner. Those procedures became a part of the 1977 published regulations. Under those regulations, 20 CFR 658.410, the local office has 15 working days to resolve the complaint informally. If it is not resolved, it is referred to the state office, which has 30 working days to resolve it. The complainant then has a right to request a hearing by a state hearing official with a right of appeal to the federal regional office. The Department can investigate further and try informal resolution. If the complainant is still dissatisfied, he may request a hearing, the result of which is the final decision of the Secretary.

The defendants argue that the plaintiffs are required to exhaust those new procedures before advancing their claims and that, in any event, those new procedures moot plaintiffs' claims. The issue before the court, however, is not one narrowly related to a specific grievance. Rather, plaintiffs claim that, despite a formal procedure mandated by guidelines, no effective complaint resolution procedure existed in 1976. Their attack is not upon structure but upon implementation.

■ The procedures mandated by the 1972 regulations, if appropriately implemented, would in all probability make any injunctive relief inappropriate even if plaintiffs prevail upon their claims of administrative inaction in 1976. If the federal defendants have, since 1976, developed a system which effectively resolves complaints, plaintiffs are no longer entitled to injunctive relief. At this juncture, however, it is undetermined whether, as plaintiffs contend, the complaint resolution in 1976 (and thereafter) existed on paper but not in fact or whether, as defendants urge, there was

and continues to be a complaint resolution procedure which, despite an occasional problem, generally functions effectively. There thus remains a disputed question of fact respecting administrative compliance with its own procedures. See *Abbott Laboratories v. Harris*, 481 F.Supp. 74 (N.D.Ill.1979).

The plaintiffs also seek certification of a class of all migrant workers who have been or will be recruited under the Interstate Recruitment System in Illinois. Under Rule 23(b)(2)[2] the court finds such a class too broad but will certify one which includes migrant workers who have been recruited under the Interstate Recruitment System in Illinois. This group consists of several thousand individuals. That number is sufficient to meet the numerosity requirement in Rule 23 which specifies that joinder of all members is impracticable. The common issue relevant to each of these members is whether the Department adequately performed its duty to supervise the Interstate Recruitment system. The named plaintiffs seek the same relief as all class members, rendering their claims typical. The plaintiffs have the same interests in obtaining proper administration of the Interstate Recruitment System as do the class members, rendering them representative of the class. The plaintiffs' attorneys are experienced litigators in this area and thus can provide adequate services to plaintiffs.

The defendant argues that a class is not necessary because the relief granted to an individual plaintiff will be applicable to all others. They also argue that the relief granted will be identical whether or not a class is certified. Although these arguments have been found persuasive in other circuits, see e. g. *Martinez v. Richardson*, 472 F.2d 1121, 1127 (10th Cir. 1973); *Craft v. Memphis Light, Gas & Water Division*, 534 F.2d 684 (6th Cir. 1976); *aff'd* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Ihrke v. Northern States Power Co.*, 459 F.2d 566, 572 (8th Cir.) *vacated on other grounds*, 409

U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972) the Seventh Circuit has specifically rejected denial of class certification because it is not necessary. In this circuit, a class will be certified if the requirements of Rule 23 have been met. *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978), *cert. denied* 441 U.S. 905, 99 S.Ct. 1998, 60 L.Ed.2d 373 (1979); *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976); *Fujishima v. Bd. of Education*, 460 F.2d 1355, 1360 (7th Cir. 1975). Since they have been met here, a class will be certified under Rule 23(b)(2).

For the above stated reasons, both motions for summary judgment as to Count I are denied.

*Count II*

Count II of the complaint alleges violations of plaintiff's rights under 42 U.S.C. § 1983, the Civil Rights Act of 1871 and the Supremacy Clause. The defendant properly asserts that 42 U.S.C. § 1983 applies only to actions by *state* officials "under color of state law." *Roots v. Callahan*, 475 F.2d 751 (5th Cir. 1973) and thus has no bearing on the acts of federal agencies or employees.

The Supremacy Clause is generally used to invalidate state statutes or regulations which are found to be inconsistent with the Constitution on laws of the United States. *Swift & Co. v. Wickham*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Plaintiffs have not demonstrated how their claim fits within this clause.

Therefore, defendants' motion for judgment on the pleadings will be granted as to Count II of plaintiff's complaint.

---

**2.** That subsection provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.