**Ela ALMENDARES, et al., Plaintiffs,**

v.

**Isaac PALMER, et al., Defendants.**

No. 3:00 CV 7524.

United States District Court,
N.D. Ohio,
Western Division.

July 16, 2004.

Mark R. Heller, Advocates for Basic Legal Equality, Victor L. Goode, Advocates for Basic Legal Equality, W. David Koeninger, Advocates for Basic Legal Equality, Toledo, OH, for Plaintiffs.

John A. Borell, Office of the Prosecuting Attorney, Lucas County, Toledo, OH, Rebecca L. Thomas, Office of the Attorney General, Health & Human Services Section, John T. Williams, Office of the Attorney General, Health & Human Services Section, Patrick W. Beatty, Ohio Department of Job and Family Services, Office of Legal Services, Juliane E. Barone, Office of the Attorney General, Health & Human Services Section, Mark H. Troutman, Office of the Attorney General, Columbus, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a civil rights class action case brought by plaintiffs Ela Almendares and Tomas Juvier against defendants Lucas County Department of Job and Family Services ("LCDJFS"), Isaac Palmer, Director of LCDJFS, and the Ohio Department of Job and Family Services ("ODJFS"). Plaintiffs allege that defendants have violated federal law by failing to provide adequate bilingual services in their operation of the Ohio Food Stamp Program. Plaintiffs claim that defendants' failure to provide such services constitutes discrimination against them on the basis of national origin and thus violates Title VI, 42 U.S.C. § 2000d *et seq.* This court has jurisdiction under 28 U.S.C. § 1331.

Pending is plaintiffs' motion for class certification. For the following reasons, that motion shall be granted.

## BACKGROUND

The plaintiffs are low-income Spanish-speaking, or "limited English proficient" ("LEP"), recipients of food stamps. They are residents of Lucas County, Ohio, and their food stamp benefits are administered by the LCDJFS. Plaintiffs allege that defendants routinely provide them and members of the proposed class with English notices and information about the food stamp program. They contend that the inability of LEP individuals to understand notices and other information communicated in English causes confusion and alienation, and constitutes unlawful discrimination against the prospective class. They request declaratory and injunctive relief on behalf of the class.

In earlier orders, this court dismissed plaintiffs' claims based on the Food Stamp Act and state and federal regulations, leaving only plaintiffs' Title VI national origin discrimination claim. Thus, plaintiffs now seek class certification to pursue their Title VI claim only.[1]

---

**1.** As I explained in an earlier order, plaintiffs cannot prevail under the Food Stamp Act or any state and federal regulations enforcing it because

Congress did not create a private right of action under the Act. *See Almendares v. Palmer,* No. 00–7524, 2002 WL 31730963, at *4 (N.D.Ohio 2002)

Plaintiffs propose to bring this action on behalf of themselves and a class consisting of:

 a. All Ohio Limited English Proficient (LEP) persons or households whose primary language is Spanish and who are receiving Food Stamps, or who have received Food Stamps in the past, or who have been certified or re-certified as eligible to receive Food Stamps, or who were or are eligible to receive Food Stamps from the Ohio Department of Job and Family Services.

 b. All Lucas County Limited English Proficient (LEP) persons or households whose primary language is Spanish and who are receiving Food Stamps, or who have received Food Stamps in the past or who have been certified or re-certified as eligible to receive Food Stamps from the Lucas County Department of Job and Family Services.

(Doc. 106, at 4).

Defendants contend, and plaintiffs do not deny, that neither of the two named plaintiffs, Ela Almendares and Tomas Juvier, has suffered an interruption in the provision of her/his food stamp benefits due to defendants' alleged failure to provide notices and other information in Spanish. Defendants point out that Almendares and Juvier, both residents of Lucas County, are assigned to the same bilingual caseworker who interprets English documents for them and otherwise communicates with them in Spanish. Defendants argue that neither plaintiff has suffered an actual injury; therefore, defendants assert that neither has standing to bring this lawsuit on behalf of the class.

Defendants also argue that because Almendares suffers from a cognitive disability that prevents her from fully understanding even her native language, she is not a good representative of the proposed class.

Additionally, defendants raise a number of arguments challenging the appropriateness of the proposed class under the requirements of Fed.R.Civ.P. 23. These contentions include: plaintiffs have not sufficiently identified the number of potential class members; the named plaintiffs' claims are not typical of the proposed class; there are insufficient common issues of fact or law among proposed class members; and the two named plaintiffs cannot adequately and fairly represent the interests of the proposed class.

## STANDARD OF REVIEW

■■■ "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (internal citation omitted). The court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). This means that a class is not maintainable simply because the complaint repeats the legal requirements of Rule 23. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). " '[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.' " *Id.* (quoting *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364).

## DISCUSSION

Defendants make two major arguments against plaintiffs' motion for class certifica-

("the language of the Food Stamp Act lacks 'rights-creating' language manifesting congressional intent to create private rights").
If they can prove their allegations, however, plaintiffs may prevail on their Title VI claim because, as I explained in an earlier order, plaintiffs allege that defendants' knowledge of and long-term noncompliance with the Food Stamp Act provisions requiring bilingual services are evidence of intentional discrimination under Title VI. *See Almendares v. Palmer,* 284 F.Supp.2d 799, 804 (N.D.Ohio 2003). As I explained,

plaintiffs allege that defendants purposefully discriminated against them when defendants chose to continue a policy of failing to ensure bilingual services and knowing that Spanish-speaking applicants and recipients of food stamps were being harmed as the consequence. If these allegations are true, one could logically infer that the policy was implemented and is being continued 'because of' its impact on national origin.
*Id.* at 808.

tion: 1) plaintiffs do not have standing to bring the suit on behalf of themselves because they have suffered no actual injury; and 2) plaintiffs have failed to establish that their proposed class action fulfills the requirements laid out in Fed.R.Civ.P. 23.

Because the standing issue turns on "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf," *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), I first consider the named plaintiffs' Article III standing to bring this suit on their own behalf. Concluding that the named plaintiffs have standing to bring this lawsuit, I then analyze their motion for class certification under Rule 23.

## I. Article III Standing

Defendants argue that the two named plaintiffs do not have standing under Article III of the United States Constitution and are therefore barred from bringing this claim on behalf of themselves or the proposed class.

■■■ "Whether a party has standing under Article III of the Constitution to bring a claim 'involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise.'" *MX Group, Inc. v. City of Covington,* 293 F.3d 326, 332 (6th Cir.2002) (quoting *Warth,* 422 U.S. at 498, 95 S.Ct. 2197). To establish standing under Article III, a plaintiff must demonstrate: 1) he or she has suffered an "injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical"; 2) a causal connection between the injury and the challenged conduct, that is, "the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court; and 3) the injury's redressability by a favorable judicial decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Doe v. Porter,* 370 F.3d 558, 562 (6th Cir.2004).

■■■ Defendants contend that, even if plaintiffs' allegations that they have not received notices and program information in Spanish are correct, the named plaintiffs have suffered no injuries as a result of such actions. This is true, according to defendants, because it is undisputed that neither Almendares nor Juvier has suffered a loss of her or his food stamp benefits as a result of defendants' alleged actions. Thus, defendants argue, neither named plaintiff has suffered an actual injury that is concrete and particularized.

Defendants' argument would be well-taken if plaintiffs sought to remedy a loss of food stamp benefits on behalf of themselves or the class. This, however, is not the underlying rationale for their Title VI claim. Plaintiffs allege that the provision of English notices and program information to Spanish-speaking LEP individuals and households is discrimination based on national origin. They seek equitable relief to remedy this alleged discrimination—they are requesting merely that defendants provide them with information in Spanish.

■■■ The "standing test requires that plaintiffs allege a particularized injury concretely and demonstrably flowing from the action of the defendants which will be redressed by the remedy sought." *Lugo v. Miller,* 640 F.2d 823, 827 (6th Cir.1981). This means that the plaintiffs must demonstrate that they have suffered "a distinct and palpable injury," that defendants' actions are the source of the injury, and that the injunctive relief plaintiffs request will "alleviate the injury." *Id.*

■■■ Almendares and Juvier both allege that they have experienced the discriminatory treatment that is the focus of this lawsuit. It is undisputed that defendants are responsible for providing the information plaintiffs receive, and their alleged failure to provide that information in Spanish is a direct cause of the injuries plaintiffs have suffered: the receipt of the program information in English and resulting confusion. Finally, the remedy plaintiffs seek—injunctive relief—will directly redress the injury plaintiffs allege.

Moreover, as the Supreme Court has explained, "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing ....'" *Warth*, 422 U.S. at 500, 95 S.Ct. 2197 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)). There is no doubt that Title VI creates a legal protection against discrimination based on national origin or that plaintiffs are, through this lawsuit, invoking the substantive right against discrimination created by Title VI.

I conclude, therefore, that the named plaintiffs have standing to bring their Title VI claim for equitable relief against defendants.

## II. Class Certification Under Fed.R.Civ.P. 23

To obtain class certification, plaintiffs must establish that the proposed class meets all the threshold requirements of Fed.R.Civ.P. 23(a) and also meets the requirements of one of the three subsections of Fed.R.Civ.P. 23(b). Rule 23 states:

(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available for the fair and efficient adjudication of the controversy.

Plaintiffs assert that their proposed class meets each of the requirements of Rule 23(a), and should be certified under either Rule 23(b)(2) or, alternatively, 23(b)(3).

### A. Rule 23(a) Requirements

#### 1. Numerosity

Plaintiffs' complaint must establish that the "class is so numerous that joinder of all members is impracticable ...." Fed.R.Civ.P. 23(a)(1). Courts consider both the number of prospective class members and several other factors related to the practicality of joinder, including "avoidance of a multiplicity of actions, geographic dispersement of class members, size of individual claims, financial resources of class members, and the ability of claimants to institute individual suits ...." 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3:6, at 251 (4th ed.2002).

It is well established that impracticality of joinder is not determined by a strict numerical test; there is no minimum number that automatically precludes class action relief. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 n. 24 (6th Cir.1976). Plaintiffs must present more than speculation, but plaintiffs do not have to "establish class size with precision." *Sims v. Parke Davis & Co.*, 334 F.Supp. 774, 781 (E.D.Mich.1971).

■ Plaintiffs' proposed class includes LEP Spanish-speaking residents of Lucas County and the State of Ohio who are either currently receiving food stamps, are eligible to receive food stamps, or have received food stamps in the past. To support their motion, plaintiffs point to data indicating that, in 2000, there were approximately 19,716 Spanish-speaking, linguistically isolated individuals in Ohio living at or below 125 percent of the federal poverty guidelines. (Doc. 172, exh. A, at 1). In Lucas County, there were approximately 689 such individuals, or 357 such households. (*Id.* at 1–2).

Plaintiffs argue that joinder of all current, former, and prospective food stamp recipients among this group is impracticable because the proposed class members have difficulty understanding English and many may be unaware that their rights have allegedly been violated. Plaintiffs also cite census data to establish that the thousands of low-income Spanish-speaking LEP individuals and households in Ohio are fairly widely geographically dispersed, thereby making joinder impracticable. (Doc. 172, at 6–7) (noting that several Ohio counties—particularly urban counties—have a large number of low-income, LEP Spanish-speaking households).

Moreover, plaintiffs argue that the proposed class members' ability to pursue separate actions is limited because poor communities typically do not have access to legal services, and many Ohio legal services offices serving the poor are already overburdened with more cases than they can handle. Additionally, plaintiffs point out that they seek injunctive relief on behalf of the proposed class and individual damage amounts would likely be quite low, decreasing the likelihood that individual class members could or would pursue individual cases against defendants. Finally, plaintiffs argue that individual class action suits brought in each county in Ohio are impracticable because very few legal services offices serving the poor have resources to pursue the issue or are even able to pursue class actions pursuant to Legal Services Corporation rules.

Defendants argue that plaintiffs' recitation of statistics regarding the number of low-income, linguistically isolated Spanish-speaking individuals in Ohio and Lucas County is meaningless because plaintiffs did not identify precisely the number of current and former food stamp recipients. Defendants also argue that the named plaintiffs are not members of the proposed class; thus, according to defendants, plaintiffs have failed to demonstrate that any one member of the proposed class exists.

Defendants' arguments are not persuasive. Households whose gross monthly income is within 130 percent of the federal poverty guidelines, whose net monthly income is within 100 percent of the poverty guidelines, and whose resources do not exceed $2,000 can qualify for food stamps. *See* Ohio Dep't of Job and Family Services, *Food Stamp Benefits Fact Sheet*, available at http://jfs.ohio.gov/factsheets/foodstamps.pdf. Clearly, many of the thousands of individuals cited by plaintiffs who live at or below 125 percent of the poverty guidelines would qualify under these criteria.

The court may infer from the facts plaintiffs presented that the proposed class—both at the statewide and Lucas County levels—is likely to include at least several hundred individuals or households. *See Senter*, 532 F.2d at 522 ("In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings ...."); *Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1013 (W.D.Mich.1987) (courts may assume joinder is impracticable when common sense indicates that a class size is large). Moreover, defendants have presented no evidence to contradict plaintiffs' assertion that the proposed class members are widely geographically distributed and linguistically and otherwise isolated, making it difficult for them to bring individual or smaller class action suits.

Defendants' suggestion that the named plaintiffs are not members of the proposed class because they allegedly do not have Article III standing is misplaced in this context. It is undisputed that plaintiffs Almendares and Juvier are residents of Lucas County, Ohio, food stamp recipients, and LEP Spanish-speaking individuals. These are the only criteria set forth by the proposed class defi-

nition. The named plaintiffs are members of the proposed class.

Thus, I find that plaintiffs have met the requirements to establish numerosity under Rule 23(a)(1).

### 2. Commonality

The commonality requirement does not require that all class members share identical claims and facts. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988). Rather, " 'there need be only a single issue common to all members of the class.' " *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3:10, at 3–50 (3d ed.1992)). The single common issue, however, may not be just any issue. It must be "a common issue the resolution of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

■ Defendants argue that the named plaintiffs have failed to establish that they were denied their food stamp benefits as a result of allegedly receiving information in English; therefore, they fail to raise common issues of fact with regard to the proposed class. Defendants also argue that individual class members' claims would require different evidence and separate factual determinations. These arguments are unpersuasive.

Plaintiffs assert that the members of the proposed class share several common factual and legal issues: "1) whether the defendants provided English-only notices to LEP class members; 2) whether the defendants provided English-only forms or applications for LEP class members to sign; 3) whether defendants provided English-only program information to LEP class members." (Doc. 172, at 8).

The commonality requirement is met "as long as the members of the class have allegedly been affected by a *general* policy of the defendant, and the general policy is the focus of the litigation." *Sweet v. Gen. Tire and Rubber Co.*, 74 F.R.D. 333, 335 (N.D.Ohio 1976) (emphasis in original); *see also Senter*, 532 F.2d at 524 (the fact that individual considerations may arise with respect to some proposed class members does not matter when class-wide discrimination is the focus of the class action).

In the instant case, plaintiffs allege generally that defendants have uniformly failed to provide notices and information in Spanish to the proposed class members. This alleged practice, if true, would affect all members of the proposed class. Moreover, plaintiffs seek merely to stop the alleged practice, not to recover individualized damage awards for each plaintiff and member of the class. I conclude, therefore, that the proposed class members share at least one common factual premise—that defendants have, as a general policy, failed to provide notices and program information in Spanish—and this premise is the foundation for the class action lawsuit and the plaintiffs' request for equitable relief against defendants.

Thus, plaintiffs meet the commonality requirement under Rule 23(a)(2).

### 3. Typicality

"[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Sprague*, 133 F.3d at 399 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082). Moreover, "a necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiffs will also advance the interests of class members." *Id.*

■ Plaintiffs contend that their claim— "that ODJFS and LCDJFS communicate to LEP persons or households exclusively, primarily, or substantially in English"—is "identical" to the claim of the proposed class. (Doc. 106, at 12). Defendants contend, in response, that the named plaintiffs have not suffered any injury and therefore have not asserted claims typical of the class. Defendants also argue that plaintiff Almendares' disability makes her claim atypical.

Furthermore, the State defendants argue that, because each of Ohio's eighty-eight counties is responsible for providing bilingual services according to its population's needs,

no one plaintiff can assert a claim typical of a statewide class' claims.

Typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. The injury plaintiffs allege is that they have received food stamp program information in English and suffered confusion or hardship because of the failure to provide information in Spanish. Although there is evidence that the two named plaintiffs benefited from the assistance of a bilingual caseworker, plaintiffs have alleged that defendants often sent them notices in English, provided information about the food stamp program in English, and required plaintiffs to sign English documents, including English language documents asserting that plaintiffs had reviewed the documents. Some of the particular facts related to the named plaintiffs' cases may be distinct, but that does not make their claim atypical. *See id.* (citing *Senter*, 532 F.2d at 525) ("[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law").

As to defendants' specific assertion about the typicality of plaintiff Almendares' claim, plaintiffs acknowledge defendants' assertion that Almendares has trouble understanding some communications in Spanish. This factual distinction does not, however, make her claim atypical of the prospective class members' claims. Her disability does not change her status as a LEP, Spanish-speaking person who receives food stamps. The remedy the plaintiffs seek on behalf of the proposed class—bilingual information and notices—would benefit Almendares.[2]

Almendares' claim is a Title VI claim, in which she seeks to remedy discrimination based on her national origin. The injury Almendares suffers is the same injury the prospective class members suffer. She is seeking merely to redress the defendants' practice of providing primarily, if not exclusively, notices and information in English. She is not seeking additional help based on her disability through this lawsuit. She is not pursuing any other claim on behalf of the class related to her or any other class member's cognitive limitations. She is entitled to pursue a claim under Title VI to receive certain federal program benefits regardless of her cognitive abilities or her intention to use the benefits she seeks.

The named plaintiffs' interests are aligned with those of the class. They seek to eliminate a general policy affecting them and the members of the proposed class. There is no evidence that their pursuit of equitable relief on behalf of the class will be compromised by any of the specific facts underlying their experiences as LEP Spanish-speaking food stamp recipients.

Thus, plaintiffs have met the requirements to establish typicality under Rule 23(a)(3).

### 4. Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately represent the class. "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). The Sixth Circuit has articulated two criteria for determining the adequacy of representation: " '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.' " *Id.* (quoting *Senter*, 532 F.2d at 525).

 Unlike the other requirements of Rules 23(a), defendant has the burden of proof on this issue. *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.1982) (internal citation omitted). Defendants do not challenge the qualifications of plaintiffs' counsel, and this

---

**2.** Almendares stated in her deposition that she has trouble understanding Spanish because of memory problems, but she explained that she can read and write simple Spanish words. It does not follow from this explanation that, as

defendants contend, "Ms. Almendares' disability renders any order requiring documents to be sent in Spanish ineffective in her case." (Doc. 194, at 12).

court knows of no reason to doubt plaintiff's counsel's qualifications. Thus, the second of the *Senter* criteria is met.

As to the first of the *Senter* criteria, defendants allege that the named plaintiffs are not adequate representatives of the class because they reside in Lucas County and cannot represent the interests of proposed class members who reside in other counties. They also contend that Almendares' cognitive disability makes her an inadequate representative because "she cannot vigorously prosecute the interests of the unnamed representatives." (Doc. 194, at 12). Finally, they argue that the named plaintiffs have not been deprived bilingual access to notices and information, and therefore have not suffered the injury asserted against the proposed class.

Arguments challenging the adequacy of class representatives should be viewed skeptically. *See, e.g., Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981). The named plaintiffs have allegedly suffered the same discrimination as the proposed class and seek relief that will benefit the entire proposed class. As discussed, *supra*, in the commonality and typicality segments of this opinion, there is nothing to suggest that the interests of prospective class members outside of Lucas County differ at all, much less significantly from those of the named plaintiffs. I am not persuaded, in any event, that any factual distinctions particular to either named plaintiff's situation make their claims atypical or overshadow the general issues of law and fact common to the class. Additionally, defendants have not produced any evidence that indicates that either named plaintiff has any motivation not to pursue vigorously the interests of the proposed class.

Defendants have not met their burden of establishing that the named representatives are inadequate is on the defendants. Thus, I conclude that plaintiffs have established adequacy for the purposes of Rule 23(a)(4).

## B. Rule 23(b) Requirements

Although plaintiffs meet each of the prerequisites set forth in Rule 23(a), they must also satisfy the requirements of one of three subsections of Rule 23(b). They assert that the class meets the requirements of Rule 23(b)(2). Alternatively, they contend that the class meets the requirements of Rule 23(b)(3). I conclude that plaintiffs may maintain their class action pursuant to Rule 23(b)(2); therefore, it is unnecessary to analyze plaintiffs' case under 23(b)(3).

Rule 23(b)(2) states that a class action may be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

The Lucas County defendants argue that plaintiffs have failed to prove that the Lucas County defendants acted or refused to act on grounds generally applicable to the class because they have not proven that the County "acted in an intentionally discriminatory manner towards Spanish-speaking LEP individuals on the basis of national origin." (Doc. 158, at 11).

Defendant State of Ohio argues that certification under Rule 23(b)(2) is inappropriate because plaintiffs request relief that is too broad—i.e., that requiring every communication from the State to be in Spanish is unnecessary and is not required by federal regulations. The State also argues that any prospective injunctive relief resulting from the named plaintiffs' individual suits would "automatically accrue to the benefit of all class members." (Doc. 181, at 20).

As to the County defendants' argument, plaintiffs need not prove, at this stage, that the defendants acted toward the proposed class with the intent to discriminate based on national origin. They need only allege such conduct, which they have done. In ruling on a motion for class certification, courts do not look to whether the plaintiffs have stated a claim or will prevail on the merits of the case, but whether they have met the requirements of Rule 23. *See Eisen*, 417 U.S. at 177, 94 S.Ct. 2140 ("nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action").

I am likewise unpersuaded by the State defendant's arguments. This court does not have a basis for deciding whether the scope of plaintiffs' requested injunction exceeds that required by the federal regulations or common sense. All that is at issue here is that plaintiffs are seeking injunctive relief on behalf of the proposed class to remedy the discrimination they allege to be taking place. They are seeking such relief.

The State relies on *Craft v. Memphis Light, Gas and Water Div.*, 534 F.2d 684 (6th Cir.1976) to support its argument that the remedy plaintiffs seek on behalf of themselves would benefit the class as a whole; therefore, the State argues, a class action is unnecessary. In *Craft,* the Sixth Circuit explained that when the focus of the proposed class action is, for example, the constitutionality of rules and regulations, the court's determination on that question will apply equally to all of the proposed class members, regardless of whether the action is certified as a class action. Thus, "no useful purpose would be served by permitting [that] case to proceed as a class action." *Id.* at 686.

The instant case is distinguishable from *Craft* because this is not a case in which the plaintiffs are challenging a rule or procedure on its face. They are not alleging that defendants violate Title VI by sending notices and providing program information in English to everyone; they allege, rather, that sending notices and giving information in English to LEP Spanish-speaking individuals violates Title VI. Thus, with respect to a certain group of recipients—the proposed class—the defendants allegedly discriminate on the basis of national origin, in violation of Title VI. This is true regardless of the legitimacy of defendants' actions regarding the more general class of food stamp recipients. *See Michigan Welfare Rights Org. v. Dempsey,* 462 F.Supp. 227, 232 (E.D.Mich.1978) (distinguishing *Craft* when the requested injunctive relief sought to remedy procedures that harmed a specific class of individuals—welfare recipients who had suffered domestic violence—but not the whole class of affected individuals—welfare recipients).

Moreover, it is not clear that any injunctive relief awarded to an individual plaintiff will automatically inure to the benefit of the class as a whole.

Because plaintiffs allege that defendants have failed to provide notices and program information in Spanish to the proposed class and seek equitable relief on behalf of the proposed class, I conclude that plaintiffs fulfill the requirements set forth in Rule 23(b)(2) and have properly established the prerequisites to certify their proposed class. Plaintiffs' motion for class certification, therefore, will be granted against all defendants.

## CONCLUSION

In light of the foregoing, it is

ORDERED THAT plaintiffs' motion for class certification be, and hereby is, granted.

So ordered.