In re THREE MILE ISLAND LITIGATION, Class Actions.

Civ. A. Nos. 81–0405, 81–0417.

United States District Court, M. D. Pennsylvania.

Aug. 17, 1982.

James R. Adams, Joseph F. Roda, Joseph F. Roda, P. C., William E. Chillas, Blakinger, Grove & Chillas, P. C., Lancaster, Pa., for plaintiffs.

John G. Harkins, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

These cases are a part of the body of litigation surrounding the 1979 accident at Three Mile Island (TMI), a nuclear power generating facility near Harrisburg, Pennsylvania. They were consolidated for pretrial purposes by the court's omnibus TMI order of December 17, 1981.[1] Neither the details of the incident, nor the procedural history, need be discussed here. Presently

1. The order of December 17, 1981 categorized the TMI litigation into subgroups and placed it all under the common caption "IN RE: TMI LITIGATION." This subgroup consists of Civil Action 81–0417 (hereinafter Adams plaintiffs) and Civil Action 81–0405 (hereinafter Lancas-

before the court are plaintiffs' motions for class certification. The motions are opposed by the defendants, owners of TMI, companies involved with its design and construction, and a company which maintained the reactor. For the reasons expressed below class action status will be denied.

Plaintiffs are all tourist-related businesses in Adams and Lancaster Counties, Pennsylvania. The Lancaster plaintiffs operate a variety of businesses associated with the Pennsylvania Dutch tourist industry, while the Adams plaintiffs generally derive their income from tourism in historic Gettysburg.[2] They allege a loss of business and/or revenue due to the TMI incident. Plaintiffs now ask for certification of an "economic harm" class under Fed.R.Civ.P. 23(b)(3). The parties' proposed class is defined as follows:

> All persons, proprietorships, partnerships, corporations and other business entities having tourist-related places of business in Lancaster County (Adams County in 81–0405), Pennsylvania more than 25 miles from Three Mile Island Reactor No. 2 which may have suffered economic harm allegedly related to the events which occurred at TMI beginning on or about March 28, 1979 and continuing thereafter. For purposes of this action, the term "tourist-related places of business" shall include hotels, motels, amusement attractions, restaurants, diners, gift shops, service stations, tour agencies, bus companies, retail stores and all other establishments the income of which depends in whole or in part upon tourists, travelers and other visitors from outside Lancaster (Adams) County.

■ The underlying principle of class actions in the Federal Rules is economy-economy for the parties and the court. Federal Rule of Civil Procedure 23 states in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

■ It is plaintiffs' burden to establish that they represent a class. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974). There is no dispute among the parties that prerequisites (a)(2), (3) and (4) are satisfied in both of the cases under consideration. The requirement of numerosity is more problematic. The plaintiffs must demonstrate that there is a large class, not simply that there are many businesses that could possibly be members of the class. In other words, the plaintiffs must show that the class actually has a large number of members, although the exact number need not be established. *Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656 (N.D.Ca.1976), mod. on other grounds 528 F.2d 1194 (9th Cir. 1976); *Pabon v. Lavine*, 70 F.R.D. 674 (S.D.N.Y. 1976); *McCoy v. McLeroy*, 348 F.Supp. 1034 (M.D.Ga.1972). Here, where the class definition includes the factor of economic harm, there must be some evidence that the al-

ter plaintiffs). Civil Action 81–0263 was consolidated with Civil Action 81–0405 for all purposes.

**2.** The Adams plaintiffs operate museums, gift shops, restaurants, a motel and conduct battle-

field tours. One plaintiff is a wholesale distributor of souvenirs. The Lancaster plaintiffs operate a theme park (Dutch Wonderland), gift shops, restaurants, campgrounds, museums, "educational tourist attractions," and motels.

leged members of the class suffered some financial detriment during the relevant period of time.

In *Nguyen Da Yen v. Kissinger* the court failed to find numerosity. In that case disgruntled Vietnamese orphans sued on behalf of all orphans who wanted to return to Viet Nam. While the court found that "nearly 2,000 children were brought to the United States" in the emergency "babylift," 70 F.R.D. at 660, it denied class certification because the plaintiffs were unable to demonstrate sufficiently numerous orphans wishing to return to Viet Nam. The court held that proof that there were at least ten and potentially 2,000 class members did not establish numerosity. 70 F.R.D. at 662.

The Adams County plaintiffs have not demonstrated numerosity. Not only do they fail to show widespread loss, they even fail to show that there are so many tourist-related businesses in the area that joinder would be impracticable. They make the conclusory statement: "In our case the class consists of at least several hundred,"[3] but they fail to provide any evidence of that fact.

■ Plaintiffs cite *Bartelson v. Dean Witter and Co.*, 86 F.R.D. 657 (E.D.Pa.1980), as authority for the proposition that a class may be certified, even though its exact size is unknown, if common sense or common knowledge indicates that it is large. This is a viable principle of law, but inapposite to the Adams County plaintiffs. In *Bartelson* there was evidence presented that the potential class numbered 3900 women. If company-wide sexually discriminatory policies were proved, the court believed it could infer some substantial effect on this large base number. The court was not assuming, without any evidence, that numerous plaintiffs existed. In the present case no evidence has been presented of the number of tourist-related businesses in Adams County which are more than twenty-five miles from TMI Reactor No. 2.

■ Exhibits attached to affidavits submitted in support of the Adams County plaintiffs' motion for class certification establish a general business decline for the year *1979 as a whole*, but reflect *increases* in sales or admissions (with the exception of Lincoln Heritage, Inc.) for the month of April 1979. According to the report prepared by the Governor's Office of Policy and Planning entitled *The Socio-Economic Impact of the Three Mile Island Accident*,[4] this is the only month during which Adams County tourism was affected by the TMI incident. The sales figures show substantial decline in the months of June-August of 1979. These were the months when the tourist business suffered nationwide due to the gasoline shortage.

The exhibit showing a decline in visitors to the Gettysburg National Military Park is inconclusive as to whether tourist-related businesses in the area were affected economically by the TMI incident, and, if so, how many. The following excerpt is illustrative:

Visitation to Gettysburg National Military Park

|  | 1977 | 1978 | 1979 |
|---|---|---|---|
| March | 64,424 | 77,009 | 67,068 |
| April | 182,741 | 118,058 | 106,241 |
| May | 244,376 | 156,022 | 132,596 |
| June | 222,504 | 215,752 | 132,641 |

As the figures indicate, there was a general decline in visitors in the 1977–1979 period. In March of 1979 there were 10,000 fewer visitors to the park than there had been the previous year. Thus there was already a decline in visitors during 1979 in a month that was presumably little affected by the accident which occurred in the last few days of the month. In April and May there were substantial declines between 1977 and 1978 and a relatively minor decrease between 1978 and 1979. Again, the significant 1979 decreases appear in the summer months.

The Lancaster County plaintiffs do provide more evidence of the potential class of plaintiffs. Attached to their reply to de-

---

**3.** Adams County plaintiffs' brief in support at 4.

**4.** Governor's Office of Policy and Planning, August 1980, page 78.

fendants memorandum opposing class certification is a list of approximately 480 businesses, claimed to be tourist related, in the geographic area of the class definition.[5] In addition the affidavit of Harry L. Flick, Jr., executive director of the Pennsylvania Dutch Visitors Bureau in Lancaster County, relates that there was a substantial drop in the number of visitors to the Lancaster area in the spring and summer of 1979. Once again though the figures are inconclusive as to causation.

The following chart shows the patterns:

|  | 1978 | 1979 | 1980 |
|---|---|---|---|
| January | 1821 | 2421 | 3560 |
| February | 3076 | 2839 | 4505 |
| March | 7137 | 7970 | 5688 |
| April | 31629 | 14550 | 13398 |
| May | 47041 | 14373 | 23486 |
| June | 68907 | 17386 | 36055 |
| July | 109675 | 31329 | 58528 |

Indisputably there was a drop in visitors beginning in April of 1979. The sharpest decline was in the summer months, and it is noteworthy that there were fewer visitors in March and April of 1980 than in the same months of 1979.

In sum, though the Lancaster County plaintiffs have established that there exist in the designated area several hundred businesses deriving part of their income from tourism, they have failed to establish anything more than that these are possible plaintiffs. Under these circumstances the court believes its docket is a more reliable indication of the number of tourist related businesses interested in pursuing claims for economic harm.

A class action based on damages attributable to a single dramatic incident is of a different species than the more common class lawsuit. In the more usual class action, based on antitrust law, discrimination, securities law or truth-in-lending, the ordinary potential plaintiff may have no idea that he even has a cause of action. A fairly

sophisticated knowledge of the law may be necessary to determine whether legal rights have been violated. Thus a study of the docket of a given jurisdiction would be of little value in determining whether the number of plaintiffs is so numerous that joinder would be impracticable. By contrast, where there has been a highly publicized incident with an immediate ascertainable effect on large numbers of people, the docket of the jurisdiction of the occurrence will usually indicate the number of people or businesses believing they have a claim for damages because of the event.[6] This court was inundated, during the early months following the incident, with lawsuits filed by businesses and residents within a twenty-five mile radius of TMI Reactor No. 2. It was apparent from the docket alone that joinder was not a satisfactory method of handling the hundreds of plaintiffs. In the instant cases complaints were filed nearly two years after the incident. The plaintiffs from the Lancaster area number six.

The plaintiffs would like to represent a group of businesses. Presumably they keep books and are aware of their profit and loss status on an annual basis when they file income tax returns. If they suffered economic losses, and if they believed the losses were caused by the nuclear accident, they could have filed suit. Only two lawsuits have been filed on behalf of Lancaster County businesses outside the twenty-five mile radius.

Even if it had been established that plaintiffs are so numerous that joinder would be impracticable, in order to certify the class the court would be required to find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. In these cases the uncommon facts and law will overshadow those that are the

---

**5.** The list includes many businesses, such as a car wash, bowling alleys and miniature golf courses, which may be only marginally tourist related. Also listed are gas stations and fast food establishments some of which, because of their location, may have a largely local trade.

**6.** *See In re Federal Skywalk Cases* 93 F.R.D. 415 (W.D.Mo., 1982). Within five months of the collapse of two skywalks in the lobby of the Hyatt Regency Hotel in Kansas City, Missouri, 150 cases were docketed in federal and state courts.

168

same. Defendants have agreed, as they have in other pending litigation, that they will not require plaintiffs to prove fault-creating conduct. Thus plaintiffs' proof will commence with evidence of causation and damages. These will be highly individual to each business. Beyond the threshold of showing that a given business would have generated certain profits absent the TMI incident, plaintiffs will have to demonstrate that they acted in a reasonable way to reduce their losses by cutting costs.

Plaintiffs urge that the similarities of this lawsuit to an earlier one in which a class was certified are compelling reasons for certification.[7] However, causation was less problematic in that class action which concerned individuals and businesses closer to the reactor. The mass evacuation from the area had an obvious effect on businesses of all types. Numerous patrons of every kind, tourists as well as residents, were gone. In Lancaster and Adams Counties the failure of a particular business to attract tourists could have multifaceted causes. The degree to which an individual business was affected by a decrease in visitors to the area would depend on what percentage of its trade derived from tourism. Most of the local customers remained in the locations more remote from the reactor. These elements would have to be established by discrete facts relevant to separate enterprises. Ultimately the nominal class action would break down into individual lawsuits.

The remaining major issue which would be common to the class is the question of whether there can be a recovery for economic loss unattended by physical injury or property damage. The same legal decision must be made in other cases pending in this court. There is no need for the question to be determined in the context of a class action. Because of stare decisis, it will be equally applicable to one of these plaintiffs if it is decided in a case prosecuted by any of them or by others claiming similar and exclusive economic injury.

7. *In re Three Mile Island Litigation*, 87 F.R.D. 433 (M.D.Pa.1980), the classes consisted of individuals and businesses within a 25 mile radi-

ORDER

IT IS HEREBY ORDERED:

(1) The motions for class certification are denied for the reasons stated in the memorandum filed this date.

(2) Businesses within the proposed class description shall have thirty days from the date of this order in which to intervene in this action.

us of TMI Reactor No. 2 who suffered economic losses resulting from the March 28, 1979 incident.