CURREY et al., Appellants,

v.

SHELL OIL COMPANY, Appellee.

[Cite as *Currey v. Shell Oil Co.* (1996), 112 Ohio App.3d 312.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 95CA25.

Decided July 26, 1996.

*Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., John R. Climaco, Michael V. Kelley, John A. Sivinski* and *David K. Householder; Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley* and *Glenn D. Feagan,* for appellants.

*Baker & Hostetler, Daniel J. Gunsett, Mark A. Johnson* and *Douglas P. Whipple; Theisen, Brock, Frye, Erb & Leeper, Paul T. Theisen* and *John Triplett,* for appellee.

HARSHA, Judge.

James Currey and others appeal from a judgment of the Washington County Court of Common Pleas denying their motion for class certification of their complaint against Shell Oil Company ("Shell"). This case arose out of a chemical explosion occurring at approximately 6:30 a.m. on May 27, 1994 at a plant owned and operated by Shell in Belpre, Ohio. The initial explosion at the plant ignited a fire at the site of tanks in which various chemicals had been stored. By approximately 9:30 that morning, the sheriff's department had begun evacuating people within a one-mile radius of the plant. A second round of forced evacuations began at around 12:30 p.m., and the fire was eventually brought under control at about 2:30 p.m. After the evacuation orders were terminated around 4:00 p.m., people began returning to their homes.

The plaintiffs in this case promptly brought an action on behalf of a class of people alleging various injuries and damages resulting from the explosion, fire and, most important, the resulting fumes, smoke and debris. The majority of the claims were related to the alleged contamination of the atmosphere and ground by airborne chemicals, as well as the debris that settled down on the persons, personalty and realty of the surrounding residential communities. These alleged personal injuries included skin rashes, irritations of the eyes, nose and throat and respiratory difficulties. Personal and real property such as motor vehicles, house finishes, lawns, gardens and house plants and various household furnishings were also allegedly damaged and contaminated by the debris.

Pursuant to the trial court's scheduling order, appellants filed their motion for class certification on February 28, 1995. Appellee opposed the certification and the trial court conducted an evidentiary hearing on appellants' motion on May 16, 1995. Appellants introduced the testimony of eight witnesses as well as two depositions, two affidavits and seven exhibits. Appellee, on the other hand, introduced the testimony of one witness, but also submitted nine affidavits and eight exhibits for the trial court's consideration.

On May 19, 1995, the trial court entered a written decision denying appellants' motion for class certification. The basis for the court's denial of the motion was twofold: first, appellants failed to show that the class was so numerous that joinder of all members was impractical as required by Civ.R. 23(A); second, appellants failed to prove that a class action would be superior to other available methods of fairly and efficiently adjudicating the controversy as required by Civ.R. 23(B)(3). This decision denying appellants' motion for class certification was subsequently entered as an order of the court on May 30, 1995.

Appellants now assign one error for our review:

"The trial court abused its discretion and erred to the prejudice of the plaintiffs-appellants by denying plaintiffs-appellants' motion for class certification."[1]

At the outset, we note that trial courts have broad discretion in determining whether to certify a case as a class action. *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus. Therefore, unless we find an abuse of that discretion, we must affirm the trial court's decision. *Id.* An abuse of discretion is more than a mere error of judgment; normally it implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 232, 12 OBR 313, 314–315, 466 N.E.2d 875, 876–877. Finally, we acknowledge the Ohio Supreme Court's warning that "[a] finding of abuse of discretion, *particularly if the trial court has refused to certify,* should be made cautiously." (Emphasis added.) *Marks,* 31 Ohio St.3d at 201, 31 OBR at 399, 509 N.E.2d at 1252.

In *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, the Supreme Court of Ohio established clear standards for reviewing a lower

---

1. As part of this assignment of error, appellants have also presented five specific issues for our consideration.

"A. The trial court's denial of class certification due to the fact that no other suits arising out of the explosion had been brought was an abuse of discretion because the trial court improperly construed the requirements of Ohio Civil Rule 23.

"B. The trial court abused its discretion in denying class certification for failure to meet the numerosity requirement where its decision incorrectly focused on the number of representative plaintiffs rather than the number of plaintiffs in the putative class.

"C. The trial court abused its discretion in examining the merits of the class action at the class certification level.

"D. The trial court's denial of certification was an abuse of discretion because the trial court failed to view the totality of the circumstances.

"E. The trial court abused its discretion by failing to recognize that a class may be certified and the damages issue deferred or a bifurcated trial held where claims for damages by putative class members could differ significantly but where issues of fact and law are common as to defendant's liability."

court's class action certification decision. That is, a trial court must make seven affirmative findings before a case may be certified as a class action. Two of these prerequisites are implicitly required by Civ.R. 23, while five others are explicitly set forth in the rule. *Id.* at paragraph one of the syllabus. The failure of a trial court to find, by a preponderance of the evidence, that all seven Civ.R. 23 requirements have been met will result in the denial of class certification. *Id.*, 36 Ohio St.3d at 94, 521 N.E.2d at 1094–1095.

The first implicit prerequisite is the existence of an unambiguous and identifiable class. *Id.* at paragraph two of the syllabus. For example, classes such as "all poor people" are too amorphous to permit identification with a reasonable effort. The second implicit prerequisite is that the class representatives must be members of that unambiguous and identifiable class. *Id.* at 96, 521 N.E.2d at 1095–1096.

Four of the explicit prerequisites are set forth in Civ.R. 23(A). A member of a class may sue as a representative party on behalf of all class members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These four requirements are often referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.

The final explicit prerequisite is set forth in Civ.R. 23(B), which requires a finding that the proposed action falls within one of its three applicable subsections. This case most closely fits within subsection (3) of the rule, which specifies that the trial court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." See Civ.R. 23(B)(3). In order to make these two findings, the rule offers four pertinent matters for the trial court to consider: (a) the interest of members of the class in individually controlling the prosecution of separate actions, (b) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (d) the difficulties likely to be encountered in the management of a class action. Civ.R. 23(B)(3).

As stated above, the trial court denied the motion for class certification based partly on its finding that appellants had failed to show that the proposed class was so numerous that joinder of all members was impractical. After a careful examination of the entire record in this matter, we hold that the trial court did

318

not abuse its discretion when it found that appellants' evidence as to the numerosity requirement was insufficient to warrant class certification.

In construing the numerosity requirement, courts have been reluctant to establish specific numerical limits for the necessary size of a class. *Marks, supra,* 31 Ohio St.3d at 202, 31 OBR at 399–400, 509 N.E.2d at 1252–1253. Rather, the courts prefer a case-by-case determination of whether the proposed class is so numerous that joinder of all members is impractical. *Warner, supra,* 36 Ohio St.3d at 97, 521 N.E.2d at 1096–1097. Furthermore, since Ohio's Civ.R. 23 is identical to Fed.R.Civ.P. 23, federal authority may be utilized as an appropriate aid to our resolution in this case. See *Marks* at 201, 31 OBR at 398–399, 509 N.E.2d at 1251–1252.

A similar issue concerning the numerosity requirement arose in *In re Three Mile Island Litigation* (M.D.Pa.1982), 95 F.R.D. 164. The plaintiffs in that case were tourist-related businesses from two counties located more than twenty-five miles from Reactor No. 2 at the nuclear power generating facility near Harrisburg, Pennsylvania. The businesses claimed that the nuclear accident on March 28, 1979, caused them various degrees of economic harm due to the declining number of visitors to the Pennsylvania Dutch and historic Gettysburg tourist areas.

When discussing numerosity, the court initially recognized that the "plaintiffs must demonstrate that there is a large class, not simply that there are many businesses that could possibly be members of the class." *Id.* at 165. Since the class representatives failed to establish anything more than the existence of mere possible class members, the court relied upon its own docket as "a more reliable indication of the number of tourist related businesses interested in pursuing claims for economic harm." *Id.* at 167. The court then acknowledged the following important distinction:

"*A class action based on damages attributable to a single dramatic incident is of a different species than the more common class lawsuit.* In the more usual class action, based on antitrust law, discrimination, securities law or truth-in-lending, the ordinary plaintiff may have no idea that he even has a cause of action. A fairly sophisticated knowledge of the law may be necessary to determine whether legal rights have been violated. Thus a study of the docket of a given jurisdiction would be of little value in determining whether the number of plaintiffs is so numerous that joinder would be impracticable. *By contrast, where there has been a highly publicized incident with an immediate ascertainable effect on large numbers of people, the docket of the jurisdiction of the occurrence will usually indicate the number of people or businesses believing they have a claim for damages because of the event.*" (Emphasis added.) *Id.,* 95 F.R.D. at 167.

Finally, in denying certification, the court noted that there were only two lawsuits naming six tourist-related businesses outside the twenty-five-mile radius currently claiming damages.

Appellants in our case attempted to satisfy the numerosity requirement in the following manner. First, the representative plaintiffs testified about the extent of their own personal injuries and property damage. Appellants then offered expert testimony regarding alleged widespread chemical contamination revealed by environmental tests conducted in the surrounding residential communities. However, even assuming the truth of this contamination testimony, such evidence in and of itself does not establish a sufficient multitude of injured persons or businesses. Like the tourist businesses discussed above, it is plaintiffs' burden to prove the existence of a large class of putative plaintiffs, not simply that there are many parties that could possibly be members of the class. The evidence submitted in this case simply reveals the latter and not the former.[2] Therefore, appellants' second issue for review is meritless.

Moreover, the trial court was also willing to consider the total number of actions initiated as a result of this incident as a reliable indication of the quantity of parties interested in pursuing claims against Shell. After examining its docket, however, the court noted that no other similar suits had been filed in the entire year after the explosion. As in the *Three Mile Island* litigation, although this case involved a highly publicized incident with a purported immediate and ascertainable effect on a large number of people, the docket of the jurisdiction of the occurrence did not indicate that a copious number of people or businesses believed that they had a claim for damages because of the event. Finally, the trial court also noted that although two representative plaintiffs were added, eight of the original twelve plaintiffs were dropped, thus resulting in a net loss of six of the most interested parties. Based on the foregoing rationale, appellants' first issue for review is also meritless.

Finally, we expressly find that none of appellants' remaining three issues for review have merit. The third issue will be disregarded because appellants have failed to identify any portion of the record in which the trial court improperly considered the merits of the underlying action.[3] See App.R. 12(A)(2).

---

2. By way of example only, we believe that appellants might have been able to establish a sufficient number of putative class members through evidence from the local hospital(s) as to the number of residents who sought immediate medical or psychological treatment or testimony from local auto body shops or home building contractors as to the number of property owners who sought their services to clean or repair damaged property, etc.

3. The trial court explicitly stated that "[t]his decision in no way touches the merits of this case."

Appellants' fourth issue is likewise without merit since they have also failed to identify any portion of the record that the trial court did not consider before rendering its judgment. See App.R. 12(A)(2). The fifth and final issue has been waived since appellants did not raise the question of bifurcation, pursuant to Civ.R. 23(C)(4), at the trial court level. See *Van Camp v. Riley* (1984), 16 Ohio App.3d 457, 463, 16 OBR 539, 544–545, 476 N.E.2d 1078, 1083–1084; *Boyd v. Edwards* (1982), 4 Ohio App.3d 142, 151, 4 OBR 234, 244, 446 N.E.2d 1151, 1160.

In conclusion, based on the totality of the circumstances presented in this case, appellants failed to establish by a preponderance of the evidence that the proposed class was so numerous that joinder of all members was impractical. Therefore, the trial court's judgment denying appellants' motion for class certification was not unreasonable, arbitrary or unconscionable.

Appellants' sole assignment of error is overruled. The judgment of the Washington County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and KLINE, J., concur.