**COMMUNITIES FOR EQUITY, on behalf of itself, its members, and all those similarly situated; Diane Madsen, on behalf of her minor daughters and all those similarly situated; Jay Roberts–Eveland, on behalf of her minor daughter and all those similarly situated, Plaintiff,**

**v.**

**MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, on behalf of itself and its members; John "Jack" Roberts; Keith Alto; Geraldine David; Keith Eldred; Paul Ellinger; Eric Federico; Dan Flynn; Margra Grillo; Robert**

Grimes; Eunice Moore; Norm Johnson; Dewayne Jones; Dennis Kniola; William Newkirk; Thomas Rashid; Robert Riemersma; Randy Salisbury; Joyce Seals; Michael Shibler; Christi Brilinski; and Does 1 to 50, Defendants.

No. 1:98 CV 479.

United States District Court,
W.D. Michigan,
Southern Division.

April 19, 1999.

H. Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, Marcia D. Greenberger, National Women's Law Center, Washington, DC, Kristen Galles, Equity Legal, Alexandria, VA, Neena Chaudhry, national Women's Law Center, Washington, DC, Barbara A. Burr, National Women's law Center, Washington, DC, for Communities for Equity, Diane Madsen, Jay Roberts-Eveland, Plaintiffs.

Edmund J. Sikorski, Ann Arbor, MI, for Michigan High School Athletic Association, Defendant.

William M. Azkoul, Azkoul & Azkoul, Grand Rapids, MI, for John Roberts, Keith Alto, Geraldine David, Keith Eldred, Paul Ellinger, Eric Federico, Dan Flynn, Margra Grillo, Robert Grimes, Norm Johnson, Dewayne Jones, Dennis Kniola, William Newkirk, Thomas Rashid, Robert Riemersma, Randy Salisbury, Joyce Seals, Michael Shibler, Christi Brilinski, Eunice Moore, Defendants.

Charles R. Gross, U.S. Atty's Office, Grand Rapids, MI, for U.S. Amicus.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on the Plaintiffs' Motion for Class Certification. For the reasons which follow, the motion will be granted.

## BACKGROUND

Plaintiffs bring this suit against the Michigan High School Athletic Association and its Representative Council, alleging that they have been excluded from opportunities to participate in interscholastic athletic programs and have received unequal treatment and benefits in these programs. They contend that this putative exclusion and unequal treatment constitute gender discrimination, in violation of (1) Title IX of the Education Amendments of 1972; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) Mich. Comp. Laws §§ 37.2302 and 37.2402. The alleged discrimination is made manifest, according to Plaintiffs, in MHSAA's: (1) refusing to sanction girls ice hockey and water polo; (2) requiring that the Plaintiff Class play its sports in non-traditional seasons; (3) operating shorter athletic seasons for some girls' sports than for boys' sports; (4) scheduling the competitions of the Plaintiff Class on inferior dates; (5) providing, assigning, and operating inferior athletic facilities to the Plaintiff Class in which to play MHSAA-sanctioned games; (6) requiring that the Plaintiff Class play some sports under rules and/or conditions different from those in the NCAA or other governing organizations, unlike boys; and (7) allocating more resources for the support and promotion of male interscholastic athletic programs than for female programs.

Plaintiffs' Motion for Class Certification asks the Court to define the proposed class as follows: all present and future female students enrolled in MHSAA member schools who participate in interscholastic athletics or who are deterred from participating in interscholastic athletics because of Defendants' discriminatory conduct and who are adversely affected by that conduct.

## STANDARD FOR CLASS CERTIFICATION

According to the United States Supreme Court, this Court must conduct a "rigorous analysis" into whether the prerequisites of Federal Rule of Civil Procedure 23 are met before certifying a class action. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996). The "rigorous analysis requirement" means that a class is not maintainable merely because the complaint parrots the legal requirements of Rule 23. *American Med. Systems*, 75 F.3d at 1079. Although a hearing prior to the

class determination is not always required, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364; *see also Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974) (stating that in some cases it will be necessary to give the parties an opportunity to present evidence on the certification question). In this case, the extensive briefing filed by the parties, the Court's past review of motions, and the documentary evidence and affidavits filed make the hearing of evidence unnecessary because the Court is able to probe behind the pleadings without additional evidence or argument.[1]

Rule 23 places the burden of class certification on the Plaintiffs. *In re American Medical Systems,* 75 F.3d at 1079; *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976). Under the language of the Rule, the Plaintiff must prove four prerequisites under subsection (a) and one of the prerequisites under subsection (b) for the class to be certified. The Rule provides in pertinent part as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) * * * *; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; * * * *

Fed. R. Civ. Proc. 23(a)-(b).

## CLASS CERTIFICATION

### Rule 23(a)(1)—Numerosity/Impracticability of Joinder

First, the Court must determine whether the class is sufficiently numerous that joinder is impracticable. Numbers alone are not dispositive when the numbers are small, but will dictate impracticability when the numbers are large. H. Newberg and A. Conte, 1 *Newberg on Class Actions,* § 3.05 (3rd ed.1992) [hereinafter *"Newberg"*]. A good faith estimate of the number of class members is sufficient to support a numerosity finding. *See Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 399 (N.D.Ill.1987). In this case, the numbers themselves justify a conclusion of numerosity and impracticability of joinder. Under Plaintiffs' theory of liability, thousands of female high school athletes and would-be athletes are subjected to Defendants' alleged discriminatory practices. In terms of specific numbers, Plaintiffs provide, for instance, evidence of 177 female ice hockey players, and 188 female water polo players, all of whom are allegedly discriminated against by Defendants' refusal to sanction those sports. Similarly, almost 20,000 female basketball players are allegedly injured by a season which is purportedly shorter than that played by boys. Other numbers are presented, but need not be addressed in detail. Suffice it to say, the numbers of alleged discriminatees is high. To the extent that this claim does not concern simply water polo players, but is about a broader claim of discrimination against female high school athletes, the class is surely so numerous as to render joinder impracticable.

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (stating that certification question concerns Rule 23 factors and not an assessment of the merits).

---

1. Defendants raise a number of liability arguments in their briefing. While these may carry the day ultimately, that day has not yet arrived. The certification determination is not concerned with a plaintiff's success on the merits. *See*

Regarding the class membership of future and deterred students, the Court notes that they are appropriate class components, since they cannot be identified. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir.1986); *Gomez,* 117 F.R.D. at 399 (holding future class members are necessarily unidentifiable, and that their joinder is therefore impracticable.). *See also Roman v. Korson,* 152 F.R.D. 101, 111 (W.D.Mich.1993) (Enslen, J.) (noting that inclusion of future class members avoids unnecessary harm and repetitive litigation). The Court concludes that the numerosity requirement is satisfied by the proposed class.

### *Rule 23(a)(2)—Commonality*

■ Next, the Rule requires commonality—that there are questions of law and fact common to class members. Not every common question suffices. *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998). What is necessary for certification are common issues the resolution of which will advance the litigation. *Id.* In cases involving the question of whether a defendant has acted through an illegal policy or procedure, commonality is readily shown because the common question becomes whether the defendant in fact acted through the illegal policy or procedure. *Van Vels v. Premier Athletic Center of Plainfield, Inc.,* 182 F.R.D. 500, 507 (W.D.Mich.1998) (Enslen, J.). Where the nature of the legal claims are such that individuals would have to submit separate proofs to establish liability, class actions are disapproved due to lack of commonality. *See, e.g., Sprague,* 133 F.3d at 398 (class action disapproved as to estoppel which would require individual proof of reliance). However, the presence of individual questions need not defeat certification. *See In re Prudential Ins. Co. of America Sales Lit.,* 148 F.3d 283, 310 (3rd Cir.1998). This should be obvious, since Rule 23 requires common questions, not the absence of individual ones. Once it is determined that there are common questions of law and fact as to a legal claim, differences in damages sustained by class members will usually not defeat certification. *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332 (11th Cir.1984).

■ Here, the common questions of fact and law are obvious enough. The overarching question is, did MHSAA and its Representative Council act in a manner inconsistent with Title IX, the Equal Protection Clause of the Fourteenth Amendment; and/or Mich. Comp. Laws §§ 37.2302 and 37.2402? The answer turns on the resolution of factual questions regarding Defendants' decisionmaking process and outcomes, and determination of the legal consequences of those facts.

### *Rule 23(a)(3)—Typicality*

Rule 23 requires that the claims asserted by class representatives be typical of class members. *American Med. Systems,* 75 F.3d at 1082. As the Court of Appeals said in the *American Medical Systems* case:

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct...."

\* \* \* \* \* \*

■ .... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Id.* (citation omitted). The typicality requirement, so explained, tends to merge with the commonality requirement. *Falcon,* 457 U.S. at 158 n. 13, 102 S.Ct. 2364. Nevertheless, it is a separate inquiry and in particular focuses attention on differences between class representative claims and class claims which would defeat the representative nature of the class action. *Fuller v. Fruehauf Trailer Corp.,* 168 F.R.D. 588, 598 (E.D.Mich.1996).

The typicality requirement is the one demanding the closest attention in this matter. The Court must determine whether, on the facts of this case, the Supreme Court's *Falcon* decision precludes a finding of typicality, given the breadth of Plaintiffs' claims. In *Falcon,* a Mexican–American employee who

alleged that he had been denied a promotion because of race discrimination brought a class action against his employer. The class included all Mexican–American employees and Mexican–American applicants for employment who had not been hired. The class was certified pursuant to a Fifth Circuit rule which permitted "across-the-board" attacks on all racially discriminatory employment practices. The Fifth Circuit had held that it was permissible for " 'an employee complaining of one employment practice to represent another complaining of another practice, if the plaintiff and the members of the class suffer from essentially the same injury. In this case, all of the claims are based on discrimination because of national origin.' " *Falcon*, 457 U.S. at 153, 102 S.Ct. 2364 (quoting *Falcon v. General Tel. Co.*, 626 F.2d 369, 375 (5th Cir.1980)). The Supreme Court reversed, holding that:

> Respondent's complaint provided an insufficient basis for concluding that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of petitioner to hire more Mexican–Americans. Without any specific presentation identifying the questions of law or fact that were common to the claims of respondent and of the members of the class he sought to represent, it was error for the District Court to presume that respondent's claim was typical of other claims against petitioner by Mexican–American employees and applicants. If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential company wide class action.

457 U.S. at 158–59, 102 S.Ct. 2364.

■ At first blush, the Supreme Court's criticism of the class certification challenged in *Falcon* appears applicable in a case such as this. After all, a number of different harms are alleged here, which have not been suffered uniformly among the proposed class representatives. There are two reasons,

however, that *Falcon* does not bar the certification of this class.

First, the various discrete harms alleged by Plaintiffs are all allegedly suffered by members of Communities for Equity, a proposed class representative. *See* Affidavits attached to Plaintiffs' Motion for Reconsideration, filed Nov. 25, 1998 (dkt.# 46). "Numerous decisions have recognized the ability of associations, both incorporated and unincorporated, to act as class representatives under Rule 23. These entities are afforded representative status, provided that the underlying purpose of the organization is to represent the interests of the class." *Upper Valley Assoc. For Handicapped Citizens v. Mills*, 168 F.R.D. 167, 171 (D.Vt.1996). Since CFE exists for the very purpose of achieving gender equity in high school sports, and since its members allege the manifold harms contained in its complaint, it achieves typicality of injury and claims through its membership.

More importantly, however, the mere fact of some distinction between the particular claims of named Plaintiffs and the diverse manifestations of discrimination alleged here is insufficient to extinguish typicality. The *Falcon* Court provided for the possibility of broad-based attacks on discrimination if there were proof of an underlying policy of discrimination. 457 U.S. at 159 n. 15, 102 S.Ct. 2364. Here, the variety of alleged manifestations of discrimination, such as inequitable facilities, scheduling, sanctioning, and rules, present a sufficient case of an underlying policy or practice of discrimination.[2] The Court determines that differences between sanctioning water polo and scheduling basketball are less significant in this matter than the typicality of claims that female high school athletes are discriminated against in violation of the various laws invoked by Plaintiffs. *See, e.g., Grasty v. Amalgamated Cloth. & Textile Workers Union*, 828 F.2d 123, 130 (3rd Cir.1987) ("Although the named plaintiffs in this case do not share all of the claims of the class, since the various claims alleged appear to stem from a single course

---

**2.** If it should be shown by the conclusion of the litigation that such a policy were absent, there might be cause to remove the individual Plaintiffs as representatives for lack of typicality. CFE, however, might remain a viable representative.

of conduct ... we cannot conclude that the district court abused its discretion in holding that the typicality requirement was met."). *See also In re Prudential Ins. Co. of America Sales Lit.*, 148 F.3d 283, 312 (3rd Cir. 1998) ("The various forms which [the class members] injuries may take do not negate a finding of typicality, provided the cause of those injuries is some common wrong."). The typicality requirement is therefore satisfied.

***Rule 23(a)(4)—Adequacy of Representation***

■ Rule 23(a) requires that the class members and their counsel be prepared to provide fair and adequate representation to the class. In *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir.1976), the Sixth Circuit Court of Appeals articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525; *see also American Med. Systems*, 75 F.3d at 1083. The 23(a)(4) requirement includes a requirement that there be no conflicts between the class representatives and the class. *See Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir.1998). Two issues in this matter raise the potentiality for conflict.

■ First, it is quite possible that members of the class have no desire to pursue this action, and are not unhappy with the status quo. However, the proposed class purports to include only those who are "adversely affected." While this term is problematic, in that it is unclear whether it should be assessed subjectively or objectively, it appears to limit the class in a way to avoid conflict. As well, even without the limiting language, this sort of putative conflict generally fails to bar class certification. *See Newberg* at § 3.30 ("the class member who wishes to remain a victim of unlawful conduct does not have a legally cognizable conflict with the class representative"). *See also Ar-*

*thur v. Starrett City Associates*, 98 F.R.D. 500, 506–07 (E.D.N.Y.1983). *But see Alston v. Virginia High School League*, 184 F.R.D. 574 (W.D.Va.1999) (exhibit 2 to Defendants' Addendum to Brief in Opposition).

Moreover, as suggested by Plaintiffs, the interests of those class members who do not consider themselves adversely affected will be adequately represented by Defendants.[3] *See Dierks v. Thompson*, 414 F.2d 453, 457 (1st Cir.1969); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 487–88 (5th Cir. 1982). "As long as both those seeking to uphold and those desiring to strike the particular regulations are adequately represented, the suit may proceed as a class action." 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1768 (2nd ed.1986).

A second type of potential conflict may be that achieving certain types of relief in this case could come at the expense of other types. For instance, MHSAA may experience legally justifiable financial constraints which make it impossible for it to sanction tournaments in both ice hockey and water polo.[4] *See Boucher v. Syracuse University*, 164 F.3d 113 (2nd Cir.1999). Should a conflict arise from the limited availability of resources, however, it may be resolved by the creation of subclasses. *See id.* at 119. In this case, the Court believes that the appropriate course is to defer consideration of any subclasses until the relief stage, if any, of this litigation. *See Newberg* at §§ 3.25 ("Potential conflicts relating to relief issues which would arise only if the plaintiffs succeed on common claims of liability on behalf of the class will not bar a finding of adequacy and may be resolved, when the need arises, by the formation of subclasses at the relief stage.") and 3.31. To the extent that the underlying issue in this case is one of unequal treatment and discrimination, the matter of whether to sanction a particular sport appears to be one relating to relief, rather than liability.

Adequacy of representation is also measured by the quality of class counsel. There

---

**3.** Query whether this obviates the need for the phrase, "and are adversely affected," in the class definition.

**4.** The Court expresses no opinion on the viability of such a contention.

is no argument here that counsel for Plaintiffs are unqualified. They are experienced in both Title IX litigation, and litigation generally. The Court determines that the requirements of Rule 23(a)(4) are satisfied.

### Rule 23(b)(2)—Injunctive or Declaratory Relief

 Under Rule 23(b)(2), the class action may be certified for injunctive or declaratory relief if the party opposing the relief requested has acted or refused to act on grounds generally applicable to the class, making the requests for such relief appropriate. The Sixth Circuit Court of Appeals has approved Rule 23(b)(2) certifications for cases involving equitable relief as to discrimination claims in light of the fact that the Advisory Committee recommended this use of the Rule in such cases. *See Senter*, 532 F.2d at 525–26.

Defendants argue that a class is unnecessary, because relief granted to named Plaintiffs would inure to the benefit of the class. The Sixth Circuit has disclaimed any necessity requirement for Rule 23(b)(2) certification. *Penland v. Warren County Jail*, 797 F.2d 332, 334 (6th Cir.1986). Even if such a requirement existed, mootness concerns would suggest the necessity of certification.[5]

To the extent that Defendants discriminate against female high school athletes through unequal treatment, Defendants act or refuse to act on grounds generally applicable to the class. Injunctive relief is, of course, an appropriate remedy for discriminatory treatment. Rule 23(b)(2) certification is therefore appropriate.

### CONCLUSION

Therefore, it is the conclusion of this Court that the Motion for Class Certification shall be granted.[6] An order shall issue consistent with this Opinion.

---

[5] Though Defendants are correct that mootness is unlikely, given the scheduling of this litigation.

[6] The parties are reminded, however, that under Fed.R.Civ.P. 23(c)(1), a certification order "may

be altered or amended before a decision on the merits." The class definition, and the propriety of the class in its entirety, may change as the litigation progresses. *See, e.g., supra* p. 573 n. 2, and p. 574.